IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

YUL B-V,

        Plaintiff,

v.

ANDREW SAUL, Commissioner
of Social Security,[1]

        Defendant.

Civil Action No.
3:19-CV-0017 (DEP)

---

| APPEARANCES: | OF COUNSEL: |
|---|---|
| FOR PLAINTIFF | |
| LACHMAN, GORTON LAW FIRM<br>P.O. Box 89<br>Endicott, NY 13760 | PETER A. GORTON, ESQ. |
| FOR DEFENDANT | |
| HON. GRANT C. JAQUITH<br>United States Attorney for the<br>Northern District of New York<br>P.O. Box 7198<br>100 S. Clinton Street<br>Syracuse, NY 13261-7198 | TIMOTHY A. RAZEL, ESQ.<br>Special Assistant U.S. Attorney |

---

[1] Plaintiff's complaint named Nancy A. Berryhill, as the Acting Commissioner of Social Security, as the defendant. On June 4, 2019, Andrew Saul took office as Social Security Commissioner. He has therefore been substituted as the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, and no further action is required in order to effectuate this change. *See* 42 U.S.C. § 405(g).

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## ORDER

Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse administrative determination by the Commissioner, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[2] Oral argument was conducted in connection with those motions on March 5, 2020, during a telephone conference held on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination did not result from the application of proper legal principles and is not supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, a transcript of which is attached and incorporated herein by reference, it is hereby

---

[2] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

ORDERED, as follows:

1) Plaintiff's motion for judgment on the pleadings is GRANTED.

2) The Commissioner's determination that plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is VACATED.

3) The matter is hereby REMANDED to the Commissioner, without a directed finding of disability, for further proceedings consistent with this determination.

4) The clerk is respectfully directed to enter judgment, based upon this determination, remanding the matter to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and closing this case.

_____
David E. Peebles
U.S. Magistrate Judge

Dated: March 10, 2020
Syracuse, NY

```
UNITED STATES  DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------x
YUL B.-V.,

                             Plaintiff,

vs.                          3:19-CV-17

NANCY A. BERRYHILL, COMMISSIONER OF
SOCIAL SECURITY,

                             Defendant.
-------------------------------------x
```

Transcript of a **Decision** held during a Telephone Conference on March 5, 2020, at the James Hanley Federal Building, 100 South Clinton Street, Syracuse, New York, the HONORABLE DAVID E. PEEBLES, United States Magistrate Judge, Presiding.

A P P E A R A N C E S

(By Telephone)

| | |
|---|---|
| For Plaintiff: | LACHMAN, GORTON LAW FIRM<br>Attorneys at Law<br>1500 East Main Street<br>Endicott, New York  13761-0089<br>  BY:  PETER A. GORTON, ESQ. |
| For Defendant: | SOCIAL SECURITY ADMINISTRATION<br>Office of the General Counsel<br>Region II<br>26 Federal Plaza - Room 3904<br>New York, New York  10278<br>  BY:  TIMOTHY A. RAZEL, ESQ. |

*Jodi L. Hibbard, RPR, CSR, CRR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York  13261-7367*
*(315) 234-8547*

1      (In Chambers, Counsel present by telephone.)

2      THE COURT: I have before me a request for judicial review of an adverse determination by the Commissioner of Social Security pursuant to 42 United States Code Sections 405(g) and 1383(c)(3).

6      The background is as follows: Plaintiff was born in February of 1968, he is currently 52 years of age; he was 50 years old at the time of the hearing in this matter and 45 at the time of the alleged onset of his disability in July of 2013. Plaintiff lives in Endicott. He apparently moved from New York City to the Binghamton, New York area at some point in the not-too-distant past. He lives in a second floor apartment. The evidence is equivocal, at one point it states that he lives with a roommate, but he reported that he lived alone in September 2015. He is six foot tall and weighs approximately 158 pounds. Plaintiff has five children. In February of 2016 they ranged in ages from 7 to 17; all reside in the New York City area. Plaintiff has an eighth grade education. While in school he was in special education classes. He did not achieve a GED. Plaintiff has a driver's license but no vehicle.

22     Plaintiff stopped working in or about October of 2011 due to a nonwork injury that's described at 295 and 342. He was a victim of an alleged police brutality incident. From 1995 to 2009, plaintiff worked as an installer of trash

1  compactor equipment. From 2009 to 2011, he worked as a
2  welder.
3          Plaintiff has both physical and mental impairments.
4  Physically, he suffered from a motor vehicle accident and an
5  assault resulting in degenerative disk disease of the
6  cervical and lumbar area with neck and shoulder pain as well
7  as leg pain and tingling. He also suffers from a hearing
8  disorder, hypertension, GERD, COPD, carpal tunnel syndrome,
9  and Raynaud's disease. He treats primarily with Physician's
10 Assistant Joseph Brunt. He also received injections from
11 Physician Assistant Bryan Burke, and he treats at Lourdes
12 Pain and Wellness with Nurse Practitioner Emily Crouse. He
13 has had injections with reportedly good results. At one
14 point he stated he had 75 percent relief up to two and a half
15 to three months after the injections, that's at 702. He at
16 another point stated he had 80 to 100 percent relief for up
17 to three to six weeks, that's at page 703. Plaintiff uses a
18 cane to ambulate although it is not prescribed by a medical
19 provider. Plaintiff has not undergone physical therapy or
20 any chiropractic intervention.
21         I note that there is one mistake in the
22 administrative law judge's decision. At page 26, ALJ Ramos
23 states that the diagnosis of herniated disk of the cervical
24 and lumbar spine as noted by plaintiff's -- claimant's
25 treating nurse practitioner and treating physician assistant

1   are not confirmed by acceptable medical sources or reflected
2   in laboratory studies.  When I reviewed the medical records,
3   I came across magnetic resonance imaging testing that was
4   performed on March 9, 2012 at page 367, which clearly
5   indicates a central disk herniation at L4-5 and another at
6   L5-S1.
7            Mentally, plaintiff suffers from post-traumatic
8   stress disorder, depressive disorder, bipolar disorder, ADHD,
9   alcohol use, polysubstance use and abuse disorder in
10  remission, and opiate use disorder, also in remission.  He
11  also suffers from panic disorder and adjustment disorder.
12  Plaintiff was hospitalized from January 13 to 14, 2015,
13  that's at 505-06, apparently as a result of taking double and
14  triple his medications at the time which was Wellbutrin.  He
15  was assessed a Global Assessment of Functioning or GAF score
16  of 50 on admission and 60 upon discharge.  He was also an
17  inpatient at New Horizons from August 18, 2014 to
18  September 2, 2014, that's at 512 and 513, to address his
19  addictions.  He suffered a relapse and was placed into a
20  program at the Addiction Center of Broome County.  At page
21  576, a GAF score of 55 was assessed.  According to plaintiff,
22  he has not taken any drugs or alcohol since 2015, that's at
23  page 82 of the transcript.  He attends Alcoholics Anonymous
24  meetings approximately two times per week.
25           In terms of medications, plaintiff has had many

1  over time, including hydroxyzine, ibuprofen, Prazosin for his
2  night tremors, Quetiapine for depression, sertraline for mood
3  swings, Zoloft, Latuda, he claims to be on the highest dose
4  of Latuda, Wellbutrin, Vistaril, and Seroquel.
5        In terms of daily living, plaintiff is able to
6  dress himself, groom, cook, clean, shop, do laundry, watch
7  television, radio, he socializes, he does landscaping, he
8  works with his hands, he bikes, and he swims.  Plaintiff is a
9  heavy smoker, has smoked for 30 years, that's at 580, 585,
10 760 of the administrative transcript.  It was reported he
11 smokes between one half and one pack of cigarettes per day.
12 That's at 82, 508, and 760 of the administrative transcript.
13 Plaintiff has been convicted, including 1989, for drug sale
14 where he was sentenced to incarceration, and for assaulting a
15 girlfriend in July of 2014 where he received 30 days of
16 incarceration and five years probation and an order of
17 protection was issued.
18       Procedurally, plaintiff applied for Title II and
19 Title XVI benefits on August 3, 2015, alleging a disability
20 onset date of July 24, 2013.  In his function report, he
21 claims disability based on anxiety, depression, OCD, PTSD,
22 post-acute withdrawal, and memory loss, that's at 233.  I
23 note that there is a -- there are prior unfavorable decisions
24 with respect to earlier applications.  There is a decision
25 from July 23, 2013, and a denial of review by the Social

JODI L. HIBBARD, RPR, CRR, CSR
(315) 234-8547

1 Security Administration Appeals Council on August 22, 2014.

2 In this case, Administrative Law Judge John P.
3 Ramos held a hearing on January 4, 2018 to address the claim
4 for benefits. ALJ Ramos issued an unfavorable decision on
5 January 31, 2018, finding plaintiff was not disabled at the
6 relevant times and therefore ineligible for the benefits
7 sought. The Social Security Administration Appeals Council
8 denied review of that opinion on November 9, 19 -- 2018,
9 making it the final determination of the agency.

10 In his decision -- I note that I have a high regard
11 for ALJ Ramos and I found his decision to be extremely
12 thorough. After determining that plaintiff was insured
13 through December 31, 2016, ALJ Ramos concluded -- he applied
14 the familiar five-step sequential test for determining
15 disability and concluded at step one that plaintiff had not
16 engaged in substantial gainful activity since July 24, 2013.

17 At step two, ALJ Ramos concluded that plaintiff
18 suffers from multiple severe impairments that impose more
19 than minimal limitations on his ability to perform basic work
20 functions, including degenerative disk disease of the
21 cervical and lumbar spine, depressive disorder, bipolar
22 disorder, attention-deficit/hyperactivity disorder, alcohol
23 use disorder, and opiate use disorder. That's at page 15 of
24 the administrative transcript. He rejected plaintiff's other
25 conditions as being severe, including a hearing disorder,

1    hypertension, GERD, COPD, carpal tunnel syndrome, Raynaud's
2    disease, stuttering, incontinence, poor circulation,
3    blackouts, headaches, traumatic brain injury/concussion, and
4    mental retardation.
5            At step three, ALJ Ramos concluded that none of
6    plaintiff's conditions met or medically equaled any of the
7    listed presumptively disabling conditions set forth in the
8    Commissioner's regulations, considering specifically Listings
9    1.02, 1.04, 1.07, 14.09, 1.00, 11.00, 14.00, 12.02, 12.03,
10   12.04, 12.06, 12.08, 12.15.
11           ALJ Ramos next surveyed the available medical
12   evidence and concluded that plaintiff is able to perform
13   the -- or meet the exertional requirements of sedentary work,
14   with limitations addressed primarily to his mental
15   conditions.
16           The ALJ concluded at step four that plaintiff is
17   not able to meet the requirements of his past relevant work
18   due to both the SVP requirements of the work and the physical
19   demands associated with them.
20           At step five, ALJ Ramos rejected the claim that
21   plaintiff has a marginal education or is illiterate,
22   concluded that plaintiff, if able to perform a full range of
23   sedentary work, the Medical Vocational Guidelines and
24   specifically Rule 201.19 would direct a finding of no
25   disability.  ALJ Ramos properly considered whether, under SSR

1    85-15, the additional limitations he placed in the RFC would
2    result in a loss of the job base on which the Grids were
3    predicated and concluded that there would be no loss in
4    plaintiff's ability to perform the basic mental demands of
5    unskilled work, and therefore under Grid Rule 201.19,
6    plaintiff would be deemed not disabled.
7    As you know, my task is limited. I must determine
8    whether correct legal principles were applied and the
9    determination that resulted is supported by substantial
10   evidence. Substantial evidence standard is a rigid one. It
11   is described in *Brault v. Social Security Administration*, 683
12   F.3d 443, by the Second Circuit as being even more demanding
13   than the clearly erroneous standard. Substantial evidence of
14   course is defined to mean such relevant evidence as a
15   reasonable mind might accept as adequate to support a
16   conclusion. In *Brault*, the Second Circuit noted that the
17   standard means once an ALJ finds facts, they can be rejected
18   only if a reasonable fact finder would have to conclude
19   otherwise.
20   In this case, plaintiff has raised three arguments
21   but really the third depends on the first and second.
22   Plaintiff contends that in light of the fact that plaintiff
23   was 27 days away from 50 years of age or meeting the
24   closely-approaching advanced age category under the Grids,
25   the higher age category should have been applied.

1          Secondly, he challenges the RFC finding and
2 specifically the failure to include any workplace and
3 attendance limitations based on the medical evidence.
4          The third, of course, is that he failed to consult
5 with a vocational expert and that would depend on the
6 additional limitations associated with work pace and
7 attendance that should have been included, according to
8 plaintiff, in the residual functional capacity.
9          I address the Grids issue first.  Under 20 C.F.R.
10 Section 404.1563, which addresses the age as a vocational
11 factor, it is noted in relevant part, "We will not apply the
12 age categories mechanically in a borderline situation.  If
13 you are within a few days to a few months of reaching an
14 older age category, and using the older age category would
15 result in a determination or decision that you are disabled,
16 we will consider whether to use the older age category after
17 evaluating the overall impact of all the factors of your
18 case."  Unfortunately the regulations do not articulate
19 specifically what factors are relevant and should be
20 considered.
21          The Commissioner concedes that this is a borderline
22 case, and that it matters because if the higher age category
23 was used in a Grid analysis, a finding of disability would be
24 directed.  I do know that the Program Operations Manual
25 System, or POMS, does indicate certain factors that an

JODI L. HIBBARD, RPR, CRR, CSR
(315) 234-8547

1  administrative law judge should consider, proximity to next
2  older age category, proximity to the next lower education
3  category, any vocational disorder from past relevant work
4  history not considered already in determining the proper Grid
5  Rule, and any nonexertional limitations not already
6  considered.  I agree with the Commissioner that the -- that
7  this is a borderline case under *Battaglia v. Commissioner of*
8  *Social Security*, 2019 WL 3764660 from the Western District of
9  New York 2019, and *Polyak v. Berryhill*, 2018 WL 6418298, it
10 is a decision from the Western District of New York also from
11 2018.
12        I also agree with the Commissioner that the Western
13 District's decision from Judge Wolford in the Western
14 District of New York is distinguishable.  It is clear that in
15 that case, the administrative law judge did not address the
16 issue of the age categories and the court found that that was
17 error.
18        I also agree with the Commissioner that the matter
19 is addressed to the sound discretion of the administrative
20 law judge, and -- but I don't agree that it is not subject to
21 any judicial review if the resulting decision is based on
22 erroneous conclusions or indefensible conclusions.
23        In this case, it's clear, as plaintiff has argued,
24 that very heavily factored by the administrative law judge
25 was the claim that plaintiff, plaintiff's condition would

improve, and I didn't find any medical evidence in the record to support that conclusion. I don't know if the administrative law judge would have arrived at the same decision if he did not believe that there was going to be improvement, but I think that the -- that does infect the decision of whether or not to apply the next higher age category, so I find error in that regard.

The second issue is work pace and absenteeism. Nurse Practitioner Crouse at 793-794 found that plaintiff would be off task more than 33 percent of the time and absent more than four times per month. Physician's Assistant Brunt made similar findings at 795 to 796. Dr. Togias, plaintiff's psychiatrist, opined that plaintiff would be off task more than 33 percent of the time and absent at least three times per month at 798-799. Dr. Slowik, the consultative examiner, at 582 concluded that plaintiff's ability to maintain a schedule was moderately to markedly impaired. Dr. Kamin at 121 found moderate limitations in the plaintiff's ability to maintain a schedule. I note in that regard that when he went through his findings of fact, page 116, which he incorporates by reference on 122, Dr. Kamin misstates the opinion of Dr. Slowik. He states that she said that, able to follow and understand simple directions and instructions, perform simple tasks, maintain a regular schedule, perform complex tasks independently, make appropriate decisions and deal with

1  stress are moderately limited when in fact, when dealing with
2  the schedule issue, Dr. Slowik at page 582 actually stated
3  that claimant's ability to maintain a regular schedule was
4  moderately to markedly impaired.
5  　　　　　I do note that the ALJ did address this issue at
6  page 30 and also at pages 36 to 37 of his decision, but I
7  didn't find any contrary opinion.  The closest thing to a
8  contrary opinion would be Dr. Kamin's, and Dr. Kamin's is
9  infected for two reasons.  First of all, it doesn't afford
10 meaningful judicial review because he makes only a conclusory
11 statement without -- that plaintiff can perform unskilled
12 light work without any explanation and narrative as to the
13 specific abilities, functional abilities of the plaintiff as
14 required and as would be helpful to permit judicial review.
15 The case law is very clear that when there is uncontradicted
16 medical opinions, they can be overcome only if there is -- if
17 the evidence to the contrary is overwhelmingly compelling,
18 which I did not find.
19 　　　　　I also found that the administrative law judge's
20 stated reasonings for rejecting the opinions of Dr. Slowik,
21 who examined the plaintiff, and Dr. Togias, who is his
22 treating physician, are not supported.  I agree with
23 plaintiff that the statement that plaintiff, there's no
24 evidence that plaintiff was not able to make his doctor's
25 appointment is belied by the record which is replete with

1  references to no-shows.

2  When it comes to activities of daily living, that's
3  always, it's always difficult to translate what a plaintiff
4  is able to do in his or her daily life with working eight
5  hours per day, five days per week on a sustained basis.  And
6  I didn't find anything in the activities of daily living that
7  would suggest to me that plaintiff is capable of performing
8  and maintaining a regular schedule.

9  So the errors at point one and point two clearly
10 infect the point three step five determination of no
11 disability and so I find that the matter needs to be vacated
12 and remanded.  I don't find persuasive evidence of
13 disability, quite frankly this was a very close case and I
14 wrestled with it quite a bit, and so I think this is
15 something that should be remanded without a directed finding
16 of disability so that the matter can be reconsidered,
17 including the 27-day issue and the residual functional
18 capacity, and specifically, the ability of plaintiff to
19 maintain a regular schedule and remain on task.

20 Thank you both for excellent presentations, I
21 enjoyed working with you.  Have a great day.

22 MR. RAZEL:  Thank you, your Honor.

23 MR. GORTON:  Thank you, your Honor.

24 (Proceedings Adjourned, 11:39 a.m.)

25

1      CERTIFICATE OF OFFICIAL REPORTER

2

3

4      I, JODI L. HIBBARD, RPR, CRR, CSR, Federal

5    Official Realtime Court Reporter, in and for the

6    United States District Court for the Northern

7    District of New York, DO HEREBY CERTIFY that

8    pursuant to Section 753, Title 28, United States

9    Code, that the foregoing is a true and correct

10   transcript of the stenographically reported

11   proceedings held in the above-entitled matter and

12   that the transcript page format is in conformance

13   with the regulations of the Judicial Conference of

14   the United States.

15

16                    Dated this 5th day of March, 2020.

17

18

19                    /S/ JODI L. HIBBARD

20                    JODI L. HIBBARD, RPR, CRR, CSR
                      Official U.S. Court Reporter
21

22

23

24

25

JODI L. HIBBARD, RPR, CRR, CSR
(315) 234-8547